UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLOBAL TRANSPORTE OCEANICO, <br><br> Plaintiff, <br><br> -against- <br><br> BRYGGEN SHIPPING and TRADING A/S, <br><br> Defendant. | 08 Civ. 6387 (DLC) <br><br><br> **ANSWER AND** <br> **COUNTER-CLAIM** |

NOW COMES Defendant, Bryggen Shipping & Trading A.S. ("Bryggen" or "Defendant"), by and through its attorneys, Holland & Knight LLP, answering the Verified Complaint ("Complaint") of Plaintiff Global Transporte Oceanico ("Global" or "Plaintiff"), and respectfully alleges as follows:

1.       Admits the allegations set forth in paragraph "1" of the Complaint.

2.       Admits the allegations set forth in paragraph "2" of the Complaint.

3.       Admits that Plaintiff has a place of business at Rua Sao Bento 8, 12th Floor, Rio De Janeiro, Brazil, but denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph "3" of the Complaint.

4.       Admits that Bryggen is incorporated under the laws of Norway, has a place of business at Gullskoggarden, 5003 Bergen. Norway, and that it acted as Owner of the vessel in question with respect to the dispute with Global, for profit, in the world wide trade, but denies the remaining allegations set forth in paragraph "4" of the Complaint.

5.       Admits the allegations set forth in paragraph "5" of the Complaint.

6.      Admits that Bryggen refused to accept Global's attempted redelivery of the *M/T Global Bahia* (the "Vessel") claiming that certain conditions under the December 29, 2004 bareboat charter party between Global and Bryggen (the "Charter"), were breached by Global, but denies the remaining allegations set forth in paragraph "6" of the Complaint.

7.      Admits that the Charter speaks for itself with regard to items Bryggen was responsible to compensate Global for upon redelivery, but denies the remainder of the allegations set forth in paragraph "7" of the Complaint.

8.      Admits that Global demanded payment for bunker fuel and lubricants in a debit note dated June 9, 2008, that the debit note was payable upon receipt, and that Bryggen has not paid the debit note, but denies the remaining allegations set forth in paragraph "8" of the Complaint.

9.      Admits that the Charter speaks for itself with regard to items Bryggen was responsible to compensate Global for upon redelivery, but denies the remainder of the allegations set forth in paragraph "9" of the Complaint.

10.     Admits that Global demanded payment for engine stores, electrical stores, and other stores in a debit note dated June 18, 2008, that the debit note was payable upon receipt, and that Bryggen has not paid the debit note, but denies the remaining allegations set forth in paragraph "10" of the Complaint.

11.     Denies the allegations set forth in paragraph "11" of the Complaint.

12.     Admits that Global demanded payment for crewing insurance and other expenses in a debit note dated June 27, 2008, that the debit note was payable upon receipt, and that Bryggen has not paid the debit note, but denies the remaining allegations set forth in paragraph "12" of the Complaint.

13.     Admits the allegations set forth in paragraph "13" of the Complaint.

14.    Admits that English law and the rules of the London Maritime Association allow the prevailing party to recover its costs and attorneys' fees in connection with the arbitration as well as interest on the award, but denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph "14" of the Complaint.

15.    The allegations in paragraph "15" of the Complaint are a legal statement with respect to 9 U.S.C. § 8 and Global's reservation of rights to which no response is necessary.

16.    Admits that the three debit notices were for the amount stated, and that Global has sought a certain amount of interest and attorneys' fees, but denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph "16" of the Complaint.

17.    Admits that garnishee banks in this District have attached monies belonging to Defendant Bryggen in connection with this action, but denies the remainder of the allegations set forth in paragraph "17" of the Complaint.

18.    The allegations in paragraph "18" of the Complaint are a legal statement to which no response is necessary.

### FURTHER ANSWERING THE COMPLAINT, AND AS FOR SEPARATE, PARTIAL AND/OR COMPLETE DEFENSES THERETO, DEFENDANT SIDOR STATES:

19.    The Complaint fails to state a cause of action upon which relief may be granted.

20.    Bryggen is not liable to Global on the causes of action alleged in the Complaint.

21.    The attachments were improper and do not confer *in personam* jurisdiction over Bryggen.

22.    This Court lacks *quasi in rem* jurisdiction over Bryggen.

23.    Global has improperly and/or insufficiently served process on Bryggen.

24.     Global has improperly provided notice of attachments of Bryggen's assets pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and Local Rule B.2 of the Rules of this Court.

25.     Global improperly sought an "Order Temporarily Sealing Court File" at the commencement of this action.

26.     Global's claims are barred by the equitable doctrine of unclean hands.

27.     Global is guilty of culpable conduct in the events giving rise to the claims under the Charter, now asserted in the Complaint, and its recovery, if any, must be diminished in proportion thereto.

28.     Any damages sustained by Global, as alleged in the Complaint, which are denied, were proximately caused by the acts of third persons over whom Bryggen has no direction or control.

29.     Global has failed to mitigate its damages or, in the alternative, has mitigated its damages so as to avoid its losses.

30.     Global's claims are overstated in the level of security sought from, and provided by, Bryggen and should be reduced by a reasonable sum.

31.     Bryggen claims by way of defense and/or limitation every provision of the Charter.

32.     This Answer is made without waiver of any of Bryggen's jurisdictional defenses or rights to arbitrate that may exist or may be found to exist between or among the parties.

## RULE 44.1 NOTICE

Defendant Bryggen hereby makes this notice in accordance with Federal Rule of Civil Procedure 44.1: Global has alleged that a Charter between it and Owners exists and provides for

the application of English law and London arbitration for any disputes arising thereunder.  Thus, Defendant Bryggen provides notice of its intent to rely on English law as appropriate in this action.

<u>**BRYGGEN'S COUNTERCLAIM**</u>

As for its Counter-claim against the Plaintiff Global, Defendant Bryggen alleges as follows:

33.    At all material times herein, Defendant Bryggen is a business entity incorporated under the laws of Norway with a place of business located at Gullskoggarden, 5003 Bergen, Norway.

34.    Bryggen's counter-claim arises under the bareboat charter party contract (the "Charter") referenced in paragraph "5" of the Verified Complaint whereby Global, as Charterer, contracted with Bryggen, as Owner, on or about December 29, 2004 for an agreed upon charter hire of the Vessel.  As such, Bryggen's counter-claim is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. §1333.

35.    Specifically, in paragraph "6" of its Complaint, Global alleges that it redelivered the vessel to Bryggen on May 20, 2008.  Global, however, failed to meet the conditions of redelivery and therefore breached the Charter.  Global's breaches, as described more fully below, arise directly from the transaction and occurrence that forms the basis of Global's Complaint, namely, the Charter.

36.    Under Clause 15 of the Charter, Global was required to redeliver the vessel to Bryggen in the same or as good structure, state, condition, and class as that in which she was delivered..."

37.    Under Clause 10 of the Charter, Global was permitted to change the flag of the Vessel, but the process of re-flagging and re-registration of the vessel was to occur on Global's time and at Global's expense.

38.    In violation of the terms of the Charter, the Vessel had not been reflagged, the Inmarsat system for the Brazilian number had not been de-activated and Bryggen's crews were not permitted to board the Vessel.  Further, Bryggen did not agree to the recommendations and conditions of the class of the Vessel prior to its redelivery.

39.    The Vessel also failed to meet the conditions of redelivery because it had numerous defects and required serious repairs.  Under Clause 10 of the Charter, Global was obligated to "maintain the Vessel, her machinery, boilers, appurtances and spare parts in a good state of repair, in efficient operating condition and in accordance with good commercial maintenance practice..."

40.    Under the Charter, Global was obligated to compensate Bryggen for repairs of the defects inflicted to the Vessel during the time the vessel was in Global's control.  Upon inspection of the Vessel many serious defects were identified.

41.    The defects include, but are not limited to, main engine damage, non-original cylinder liners being installed in certain units which resulted in the under-performance of the Main Engine, sea growth and barnacle accumulation on the underwater areas of the hull, corrosion of the hydraulic pilot lines to the cargo pumps, rust to the hydraulic high pressure lines, disconnection of cargo steam lines, wasting of the cable trunk and branch lines, and wasting of certain sections on the catwalks.

42.    Other defects include, but are not limited to, poor condition of the pump room, out of order tank pressure alarms and cargo tank level indicators, disconnected cargo heating coils, out of

order aft draft gauge, unacceptable modification of original cargo valves with actuators and valve wheels, poor condition of cargo heaters inlet and outlet valves, and wasting of flow control valves, shock pads, and emergency FRAMO connections.

43.    Under Clause 9 of the Charter, Global is required to "ensure that all spare parts listed in the inventory and used during the Charter Period are replaced at their expense prior to redelivery of the vessel." Accordingly, Global was obliged to ensure that the Vessel had all of the spare parts initially provided by Bryggen replaced and on board prior to redelivery of the Vessel.

44.    Global failed to replenish the spare parts it used during the charter period. Specifically, Global used and failed to replace many spare parts that were on board the Vessel when it was initially delivered to Global. The spares that were not replaced include, but are not limited to, the anchor and tank radar, and the spare parts for the tank pressure alarms, the aft draft gauge, the pressure and temperature sensors, the cargo valves, the cargo tank recirculation system, the oil water interface detector, the FRAMO, and the radio communication equipment.

45.    After Global breached its obligations under the Charter, Bryggen had the Vessel undergo initial repairs for a number of its defects in a port in Montevideo, Uruguay from July 1, 2008 until July 17, 2008. The repairs were performed by Tsakos Industrias Navalas S.A. ("Tsakos"). The invoice for the initial repairs totaled $142,758; which Bryggen paid Tsakos in full.

46.    During the time the Vessel was undergoing initial repairs in Montevideo, Uruguay, Bryggen incurred additional expenses related to port pilotage and other port expenses in the amounts of $39,505 and $20,550.

47.    The remaining vessel repair costs, replacement of parts, and expenses by subcontractors in connection with the Vessel repairs (including vessel agents, surveyors, suppliers, and others), for which Global is liable for its breach of the Charter, amount to $805,393.00.

48.    The total estimated cost to repair all of the Vessel defects, replace the spares on the Vessel, and expenses in connection therewith (as set forth in paragraphs 45-47), is $1,008,206.

49.    On or about May 20, 2008, when Global alleges to have redelivered the vessel, Bryggen's crew were not permitted to board the vessel due to re-flagging issues.  Bryggen suffered loss of hire in the amount of $4,600 per day for a total of twenty-seven days totaling $124,200.

50.    Bryggen also was forced to pay crewing and superintendent costs in connection with the Vessel damage and in the approximate amount of $150,000.

51.    Bryggen's total principal counter-claim against Global is **$1,282,406**.

52.    In a side letter to the Charter, Global agreed to place $500,000 in an escrow account at DnB NOR Bank ASA as a guarantee for among other things, "unrightful redelivery of the Vessel, damage to the Vessel or lack of agreed maintenance."  The current amount in escrow, with interest, totals $551,881.02.

53.    Bryggen's total principal claim, less the $551,881.02. already secured against Global, totals $730,524.98.

54.    Bryggen, like Global in paragraph "16" of its Verified Complaint, expects to incur $300,000 in legal costs and expenses in London arbitration and interest in the amount of $94,968.25 ($730,524.98 x 6.5% x 2 years).

55.    Therefore, Bryggen's cumulative counterclaim against Plaintiff, therefore totals **$1,125,493.23**, as best as can presently be determined.

56.    Bryggen has provided Global written notice of the Vessel damage, the lost hire claim, and the crewing and superintendent expenses, along with the Tsakos invoices and related expenses at Montevideo, Uruguay in connection with the initial repairs.  Despite Bryggen's notice and demand for payment, Global has refused to accept responsibility or pay any portion of the outstanding damages suffered by Bryggen.

## PRAYER FOR RELIEF

WHEREFORE, the Defendant Bryggen Shipping and Trading A/S respectfully requests:

1.    That this Court dismiss the Plaintiff's Verified Complaint against the Defendant with prejudice;

2.    That this Court cite Plaintiff to answer under oath all allegations in Defendant Bryggen's counterclaims;

3.    That pursuant to the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, this Court issue an Order directing Plaintiff to post counter-security in the sum of $1,125,493.23, failing which: (a) Plaintiff be enjoined from prosecuting its claims against Defendant here, in the London arbitration, or any other venue; and/or (b) Plaintiff's attachment of any and all of Defendant's property attached in this action pursuant to Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions immediately be vacated;

4.    That upon the posting of Plaintiff's counter-security in the sum of $1,125,493.23, that this matter be placed on the suspense calendar pending arbitration in London, and that this Court retain jurisdiction over this matter through the entry of any judgment or award associated

with any of the claims currently pending, or which may be initiated in the future, including any

appeals thereof;

    5.      That this Court recognize and confirm any arbitration award(s) or judgment(s)

rendered on the counter-claims set forth herein as a Judgment of this Court; and

    6.      That this Court grant Defendant such other and further relief as the Court may deem

just and proper.

Dated: New York, New York
       July 31, 2008

                                   HOLLAND & KNIGHT LLP

By:           _____

                                   Michael J. Frevola
                                   Christopher R. Nolan
                                   195 Broadway
                                   New York, New York 10007
                                   Telephone:  (212) 513-3200
                                   Telefax:  (212) 385-9010 fax
                                   E-mail:  michael.frevola@hklaw.com
                                                   christopher.nolan@hklaw.com
                                   *Attorneys for Defendant*

To:     DEORCHIS, WIENER & PARTNERS
        John A. Orzel
        61 Broadway, 26th Floor
        New York, New York
        10006-2820
        *Attorneys for Plaintiff*

# 5510478_v1

10