UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLOBAL TRANSPORTE OCEANICO,

             Plaintiff,

         -against-

BRYGGEN SHIPPING and TRADING A/S,

           Defendant.

08 Civ. 6387 (DLC)

## AFFIRMATION OF CHRISTOPHER R. NOLAN

STATE OF NEW YORK    )
                        ) ss.:
COUNTY OF NEW YORK  )

       CHRISTOPHER R. NOLAN, an attorney admitted to practice in the State of New York, affirms under penalty of perjury:

    1.    I am a member of the bar of this Court and associated with the law firm of Holland & Knight LLP, attorneys for the defendant Bryggen Shipping and Trading A/S ("Bryggen"). I make this affirmation for the convenience of the Court and in support of Bryggen's motion for an Order, pursuant to Rule E(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rule"), directing that Plaintiff Global Transporte Oceanico (hereinafter "Global"), provide counter-security on Bryggen's counter-claim. I make this affirmation on the basis of my personal knowledge, or, where indicated, on information provided to me.

    2.    Attached hereto as Exhibit A is a true and correct copy of Global's Verified Complaint dated July 15, 2008.

3.    Attached hereto as Exhibit B is a true and correct copy of Bryggen's Answer and counter-claim dated July 31, 2008.

4.    To date, counsel for Global has notified Bryggen and the undersigned that pursuant to the order of attachment in this case, $189,448.37 of Bryggen's monies have been restrained at the respective garnishee banks.

5.    Counsel for Global has also notified the undersigned that the Order and Writ of attachments in this matter are not presently being served upon garnishee banks. Overseas counsel for Bryggen informs the undersigned that this is a result of overseas counsel for both Global and Bryggen agreeing to a letter of guarantee in the full amount of Global's claim here, $874,728.95. While the letter of guarantee is not finalized due to certain wording being revised and corrected, it is expected to be completed and executed by Bryggen's bank, DnB NOR Bank ASA, in the coming days. Bryggen undertakes to file a finalized copy of the letter of guarantee with this Court with Bryggen's reply papers in further support of its motion for counter-security.

6.    Upon execution of the letter of guarantee by DnB NOR Bank ASA, Global will be fully secured for its Charter claim damages alleged in its Verified Complaint.

7.    In a side letter to the Charter, Global agreed to place $500,000 in an escrow account at DnB NOR Bank ASA as a guarantee for among other things, "unrightful redelivery of the Vessel, damage to the Vessel or lack of agreed maintenance." The undersigned is informed the current amount in escrow, with interest, totals $551,881.02.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 31, 2008

_____
CHRISTOPHER R. NOLAN

# 5513508_v1

2

# Exhibit A

JUDGE COTE

**'08 CIV 6387**

**DEORCHIS & PARTNERS, LLP**
61 Broadway, 26th Floor
New York, New York  10006-2802
(212) 344-4700

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GLOBAL TRANSPORTE OCEANICO,

                          Plaintiff,        **08 Civ.**       (    )

      - against -                        **VERIFIED COMPLAINT
AND RULE B ATTACHMENT**

BRYGGEN SHIPPING and TRADING A/S,

                           Defendant.
-------------------------------------------------------------X

       Plaintiff GLOBAL TRANSPORTE OCEANICO, ("Global"), by its attorneys, DE ORCHIS & PARTNERS, LLP., as and for its Verified Complaint against Defendant BRYGGEN SHIPPING and TRADING A/S, ("Bryggen"), alleges upon information and belief, as follows:

       1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333. Jurisdiction is also proper pursuant to the Court's federal question jur isdiction pursuant to 28 U.S.C. § 1331.

       2.     Venue is proper under 28 U.S.C. §§ 1391 (d) because Defendant Bryggen is an alien.

       3.     At and during all times hereinafter mentioned, Plaintiff Global was, and still is, a corporation organized and existing under and by virtue of the laws of Brazil, with a principal place of business located at Rua Sao Bento 8, 12th floor, Rio De Janeiro, Brazil.  Global, at all

times hereinafter mentioned, was engaged in the business of owning, chartering and/or operating vessels for profit in world wide trade.

4.     Upon information and belief, Defendant Bryggen is a corporation or other business entity incorporated under the laws of Norway or some other foreign country, with an office and place of business located at Gullskoggarden, 5003 Bergen, Norway. Bryggen, at all times hereinafter mentioned, was engaged in the business of vessel owning, chartering and/or operating vessels for profit in world wide trade.

5.     On or about December 29, 2004, Global, as charterer and Bryggen, as owners, entered into a bareboat charter party contract for the vessel GLOBAL BAHIA, for an agreed upon charter hire.

6.     The vessel GLOBAL BAHIA was redelivered by Global to Bryggen on May 20, 2008.   Bryggen refused to accept redelivery of the vessel, claiming that certain conditions precedent to redelivery have not been fulfilled.

7.     Pursuant to the bareboat charter party contract, Bryggen was obligated to compensate Global for bunker fuel, lubricating oil that remained on board the vessel when it was redelivered by Global and which were consumed after the vessel was redelivered.

8.     By debit note dated June 9, 2008, Global demanded payment for the bunker fuel and lubricants that remained on board the vessel at redelivery and that was consumed after redelivery in the amount of US$204,377.11.  Global's  June 9, 2008 debit note was payable upon receipt by Bryggen.  Bryggen has not paid any portion of the June 9, 2008 debit note.

2

9.      Pursuant to the bareboat charter party contract, Bryggen was obligated to pay for all engine, electrical and other stores on board the vessel GLOBAL BAHIA upon her redelivery to Bryggen.

10.     By debit note dated June 18, 2008, Global demanded payment for the engine stores, electrical stores and other stores that remained on board the vessel at redelivery in the amount of US$76,234.99. Global's June 18, 2008 debit note was payable upon receipt by Bryggen. Bryggen has not paid any portion of the June 9, 2008 debit note.

11.     As a result of Bryggen's unjustified and wrongful refusal to accept redelivery of the GLOBAL BAHIA, Global has incurred crewing, insurance and other expenses in relation to the maintenance of the GLOBAL BAHIA after the redelivery date.

12.     By debit note dated June 27, 2008, Global demanded payment for crewing, insurance and other expenses incurred as a result of Bryggen' s unjustified refusal to accept redelivery of the GLOBAL BAHIA in the amount of US$227,997.59. Global's debit note was payable upon receipt by Bryggen. Bryggen has not paid any portion of the June 27, 2008 debit note.

13.     The bareboat charter party contract entered into between Global and Bryggen contained an arbitration clause providing that all disputes between the parties are to be referred to arbitration in London, before a panel of three arbitrators, and shall be determined under English law and shall be conducted pursuant to the rules of the London Maritime Arbitration Association. The parties have commenced London arbitration.

14.     Under English law and under the rules of the London Maritime Arbitration Association, the prevailing party to an arbitration is entitled to recover its costs and attorney

3

fees incurred in connection with that arbitration as well as interest on the award.  Global anticipates that its legal costs and expenses associated with the London arbitration will be in the region of US$300,000.00.

15.    The action herein is submitted in accordance with Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure and the Federal Arbitration Act, 9 U.S.C. § 8 and is therefore in no way a waiver of the bareboat charter party contract's arbitratio n provision.

16.    Upon information and belief it will take two years to fully arbitrate Global's claims in London arbitration and therefore Global's total claim amounts to:

| | |
|---|---|
| June 9, 2008 Debit Note: | US$204,377.11 |
| June 15, 2008 Debit Note: | US$ 76,234.99 |
| June 27, 2008 Debit Note: | US$227,997.59 |
| **Subtotal:** | **US$508,609.69** |
| Interest: | US$ 66,119.26 [508,609.69 X 6.5% X 2 yrs.] |
| Attorney fees and Costs: | **US$300,000.00** |
| Total: | **US$874,728.95** |

17.    After due investigation, Bryggen cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Bryggen now has or will have during the pendency of this action, assets, comprising *inter alia,* cash, funds, credits, debts, wire transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Bryggen ("asse ts"), including but not

4

limited to assets at, being transferred through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein, within this District and subject to the jurisdiction of this Court including, but not limited to, ABN Amro, American Express Bank, Atlantic Bank of New York, Bank of America, Bank of China, Barclay's Bank, BNP Paribas, Citibank, Deutsche Bank Trust Co., DNB Nor Bank ASA, HSBC Bank NA, JP Morgan Chase Bank, The Bank of New York, Standard Chartered Bank, Societe Generale and/or Wachovia Bank, which are believed to be due and owing to Bryggen.

18.    Global seeks an Order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching any assets of Bryggen held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over Bryggen and to secure and/or satisfy Global's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against Bryggen, citing it to appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That since the defendant Bryggen cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all tangible or intangible property in whatever form, including but not limited to cash, funds, credits, debts, wire transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Bryggen, ("assets"), including but not limited to assets at, being transferred through, or being

5

transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein, including, but not limited to, which are believed to be due and owing to Bryggen in the amount of US$874,728.95 to satisfy and/or secure Global's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B to answer the matters alleged in the Complaint;

      C.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

      E.    That Global has such other, further and different relief as the Court may deem just and proper.

Dated:  New York, New York
       July 15, 2008

                **DEORCHIS & PARTNERS, LLP**
                *Attorneys for Plaintiff*

                By: _____
                   John A. Orzel (JO-2420)
                   61 Broadway, 26th Floor
                   New York, New York  10006-2802
                   (212) 344-4700

## VERIFICATION

John A. Orzel declares and states that he is a partner in the law firm of DeOrchis & Partners, LLP, attorneys for plaintiff in this action, and that the foregoing Verified Complaint is true to the best of his information and belief; that the ground of his belief as to all matters not stated upon knowledge is information furnished to him to by plaintiff and; that the reason why the Verification is not made by plaintiff is that plaintiff is a corporation none of whose officers or directors are present within the District.

I declare and state under penalty of perjury that the foregoing is true and correct.

Executed on July 15th 2008

John A. Orzel

7

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLOBAL TRANSPORTE OCEANICO, | |
| Plaintiff, | 08 Civ. 6387 (DLC) |
| -against- | |
| BRYGGEN SHIPPING and TRADING A/S, | **ANSWER AND COUNTER-CLAIM** |
| Defendant. | |

NOW COMES Defendant, Bryggen Shipping & Trading A.S. ("Bryggen" or "Defendant"), by and through its attorneys, Holland & Knight LLP, answering the Verified Complaint ("Complaint") of Plaintiff Global Transporte Oceanico ("Global" or "Plaintiff"), and respectfully alleges as follows:

1.    Admits the allegations set forth in paragraph "1" of the Complaint.

2.    Admits the allegations set forth in paragraph "2" of the Complaint.

3.    Admits that Plaintiff has a place of business at Rua Sao Bento 8, 12th Floor, Rio De Janeiro, Brazil, but denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph "3" of the Complaint.

4.    Admits that Bryggen is incorporated under the laws of Norway, has a place of business at Gullskoggarden, 5003 Bergen. Norway, and that it acted as Owner of the vessel in question with respect to the dispute with Global, for profit, in the world wide trade, but denies the remaining allegations set forth in paragraph "4" of the Complaint.

5.    Admits the allegations set forth in paragraph "5" of the Complaint.

6.    Admits that Bryggen refused to accept Global's attempted redelivery of the *M/T Global Bahia* (the "Vessel") claiming that certain conditions under the December 29, 2004 bareboat charter party between Global and Bryggen (the "Charter"), were breached by Global, but denies the remaining allegations set forth in paragraph "6" of the Complaint.

7.    Admits that the Charter speaks for itself with regard to items Bryggen was responsible to compensate Global for upon redelivery, but denies the remainder of the allegations set forth in paragraph "7" of the Complaint.

8.    Admits that Global demanded payment for bunker fuel and lubricants in a debit note dated June 9, 2008, that the debit note was payable upon receipt, and that Bryggen has not paid the debit note, but denies the remaining allegations set forth in paragraph "8" of the Complaint.

9.    Admits that the Charter speaks for itself with regard to items Bryggen was responsible to compensate Global for upon redelivery, but denies the remainder of the allegations set forth in paragraph "9" of the Complaint.

10.    Admits that Global demanded payment for engine stores, electrical stores, and other stores in a debit note dated June 18, 2008, that the debit note was payable upon receipt, and that Bryggen has not paid the debit note, but denies the remaining allegations set forth in paragraph "10" of the Complaint.

11.    Denies the allegations set forth in paragraph "11" of the Complaint.

12.    Admits that Global demanded payment for crewing insurance and other expenses in a debit note dated June 27, 2008, that the debit note was payable upon receipt, and that Bryggen has not paid the debit note, but denies the remaining allegations set forth in paragraph "12" of the Complaint.

13.    Admits the allegations set forth in paragraph "13" of the Complaint.

14.    Admits that English law and the rules of the London Maritime Association allow the prevailing party to recover its costs and attorneys' fees in connection with the arbitration as well as interest on the award, but denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph "14" of the Complaint.

15.    The allegations in paragraph "15" of the Complaint are a legal statement with respect to 9 U.S.C. § 8 and Global's reservation of rights to which no response is necessary.

16.    Admits that the three debit notices were for the amount stated, and that Global has sought a certain amount of interest and attorneys' fees, but denies having knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in paragraph "16" of the Complaint.

17.    Admits that garnishee banks in this District have attached monies belonging to Defendant Bryggen in connection with this action, but denies the remainder of the allegations set forth in paragraph "17" of the Complaint.

18.    The allegations in paragraph "18" of the Complaint are a legal statement to which no response is necessary.

### FURTHER ANSWERING THE COMPLAINT, AND AS FOR SEPARATE, PARTIAL AND/OR COMPLETE DEFENSES THERETO, DEFENDANT SIDOR STATES:

19.    The Complaint fails to state a cause of action upon which relief may be granted.

20.    Bryggen is not liable to Global on the causes of action alleged in the Complaint.

21.    The attachments were improper and do not confer *in personam* jurisdiction over Bryggen.

22.    This Court lacks *quasi in rem* jurisdiction over Bryggen.

23.    Global has improperly and/or insufficiently served process on Bryggen.

3

24.    Global has improperly provided notice of attachments of Bryggen's assets pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and Local Rule B.2 of the Rules of this Court.

25.    Global improperly sought an "Order Temporarily Sealing Court File" at the commencement of this action.

26.    Global's claims are barred by the equitable doctrine of unclean hands.

27.    Global is guilty of culpable conduct in the events giving rise to the claims under the Charter, now asserted in the Complaint, and its recovery, if any, must be diminished in proportion thereto.

28.    Any damages sustained by Global, as alleged in the Complaint, which are denied, were proximately caused by the acts of third persons over whom Bryggen has no direction or control.

29.    Global has failed to mitigate its damages or, in the alternative, has mitigated its damages so as to avoid its losses.

30.    Global's claims are overstated in the level of security sought from, and provided by, Bryggen and should be reduced by a reasonable sum.

31.    Bryggen claims by way of defense and/or limitation every provision of the Charter.

32.    This Answer is made without waiver of any of Bryggen's jurisdictional defenses or rights to arbitrate that may exist or may be found to exist between or among the parties.

## RULE 44.1 NOTICE

Defendant Bryggen hereby makes this notice in accordance with Federal Rule of Civil Procedure 44.1:  Global has alleged that a Charter between it and Owners exists and provides for

the application of English law and London arbitration for any disputes arising thereunder.  Thus, Defendant Bryggen provides notice of its intent to rely on English law as appropriate in this action.

## BRYGGEN'S COUNTERCLAIM

As for its Counter-claim against the Plaintiff Global, Defendant Bryggen alleges as follows:

33.   At all material times herein, Defendant Bryggen is a business entity incorporated under the laws of Norway with a place of business located at Gullskoggarden, 5003 Bergen, Norway.

34.   Bryggen's counter-claim arises under the bareboat charter party contract (the "Charter") referenced in paragraph "5" of the Verified Complaint whereby Global, as Charterer, contracted with Bryggen, as Owner, on or about December 29, 2004 for an agreed upon charter hire of the Vessel.  As such, Bryggen's counter-claim is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. §1333.

35.   Specifically, in paragraph "6" of its Complaint, Global alleges that it redelivered the vessel to Bryggen on May 20, 2008.  Global, however, failed to meet the conditions of redelivery and therefore breached the Charter.  Global's breaches, as described more fully below, arise directly from the transaction and occurrence that forms the basis of Global's Complaint, namely, the Charter.

36.   Under Clause 15 of the Charter, Global was required to redeliver the vessel to Bryggen in the same or as good structure, state, condition, and class as that in which she was delivered..."

37.    Under Clause 10 of the Charter, Global was permitted to change the flag of the Vessel, but the process of re-flagging and re-registration of the vessel was to occur on Global's time and at Global's expense.

38.    In violation of the terms of the Charter, the Vessel had not been reflagged, the Inmarsat system for the Brazilian number had not been de-activated and Bryggen's crews were not permitted to board the Vessel.    Further, Bryggen did not agree to the recommendations and conditions of the class of the Vessel prior to its redelivery.

39.    The Vessel also failed to meet the conditions of redelivery because it had numerous defects and required serious repairs.    Under Clause 10 of the Charter, Global was obligated to "maintain the Vessel, her machinery, boilers, appurtances and spare parts in a good state of repair, in efficient operating condition and in accordance with good commercial maintenance practice..."

40.    Under the Charter, Global was obligated to compensate Bryggen for repairs of the defects inflicted to the Vessel during the time the vessel was in Global's control.    Upon inspection of the Vessel many serious defects were identified.

41.    The defects include, but are not limited to, main engine damage, non-original cylinder liners being installed in certain units which resulted in the under-performance of the Main Engine, sea growth and barnacle accumulation on the underwater areas of the hull, corrosion of the hydraulic pilot lines to the cargo pumps, rust to the hydraulic high pressure lines, disconnection of cargo steam lines, wasting of the cable trunk and branch lines, and wasting of certain sections on the catwalks.

42.    Other defects include, but are not limited to, poor condition of the pump room, out of order tank pressure alarms and cargo tank level indicators, disconnected cargo heating coils, out of

order aft draft gauge, unacceptable modification of original cargo valves with actuators and valve wheels, poor condition of cargo heaters inlet and outlet valves, and wasting of flow control valves, shock pads, and emergency FRAMO connections.

43.    Under Clause 9 of the Charter, Global is required to "ensure that all spare parts listed in the inventory and used during the Charter Period are replaced at their expense prior to redelivery of the vessel." Accordingly, Global was obliged to ensure that the Vessel had all of the spare parts initially provided by Bryggen replaced and on board prior to redelivery of the Vessel.

44.    Global failed to replenish the spare parts it used during the charter period. Specifically, Global used and failed to replace many spare parts that were on board the Vessel when it was initially delivered to Global. The spares that were not replaced include, but are not limited to, the anchor and tank radar, and the spare parts for the tank pressure alarms, the aft draft gauge, the pressure and temperature sensors, the cargo valves, the cargo tank recirculation system, the oil water interface detector, the FRAMO, and the radio communication equipment.

45.    After Global breached its obligations under the Charter, Bryggen had the Vessel undergo initial repairs for a number of its defects in a port in Montevideo, Uruguay from July 1, 2008 until July 17, 2008. The repairs were performed by Tsakos Industrias Navalas S.A. ("Tsakos"). The invoice for the initial repairs totaled $142,758; which Bryggen paid Tsakos in full.

46.    During the time the Vessel was undergoing initial repairs in Montevideo, Uruguay, Bryggen incurred additional expenses related to port pilotage and other port expenses in the amounts of $39,505 and $20,550.

7

47.    The remaining vessel repair costs, replacement of parts, and expenses by subcontractors in connection with the Vessel repairs (including vessel agents, surveyors, suppliers, and others), for which Global is liable for its breach of the Charter, amount to $805,393.00.

48.    The total estimated cost to repair all of the Vessel defects, replace the spares on the Vessel, and expenses in connection therewith (as set forth in paragraphs 45-47), is $1,008,206.

49.    On or about May 20, 2008, when Global alleges to have redelivered the vessel, Bryggen's crew were not permitted to board the vessel due to re-flagging issues. Bryggen suffered loss of hire in the amount of $4,600 per day for a total of twenty-seven days totaling $124,200.

50.    Bryggen also was forced to pay crewing and superintendent costs in connection with the Vessel damage and in the approximate amount of $150,000.

51.    Bryggen's total principal counter-claim against Global is **$1,282,406**.

52.    In a side letter to the Charter, Global agreed to place $500,000 in an escrow account at DnB NOR Bank ASA as a guarantee for among other things, "unrightful redelivery of the Vessel, damage to the Vessel or lack of agreed maintenance." The current amount in escrow, with interest, totals $551,881.02.

53.    Bryggen's total principal claim, less the $551,881.02. already secured against Global, totals $730,524.98.

54.    Bryggen, like Global in paragraph "16" of its Verified Complaint, expects to incur $300,000 in legal costs and expenses in London arbitration and interest in the amount of $94,968.25 ($730,524.98 x 6.5% x 2 years).

55.    Therefore, Bryggen's cumulative counterclaim against Plaintiff, therefore totals **$1,125,493.23**, as best as can presently be determined.

8

56.    Bryggen has provided Global written notice of the Vessel damage, the lost hire claim, and the crewing and superintendent expenses, along with the Tsakos invoices and related expenses at Montevideo, Uruguay in connection with the initial repairs. Despite Bryggen's notice and demand for payment, Global has refused to accept responsibility or pay any portion of the outstanding damages suffered by Bryggen.

## PRAYER FOR RELIEF

WHEREFORE, the Defendant Bryggen Shipping and Trading A/S respectfully requests:

1.    That this Court dismiss the Plaintiff's Verified Complaint against the Defendant with prejudice;

2.    That this Court cite Plaintiff to answer under oath all allegations in Defendant Bryggen's counterclaims;

3.    That pursuant to the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, this Court issue an Order directing Plaintiff to post counter-security in the sum of $1,125,493.23, failing which: (a) Plaintiff be enjoined from prosecuting its claims against Defendant here, in the London arbitration, or any other venue; and/or (b) Plaintiff's attachment of any and all of Defendant's property attached in this action pursuant to Rule B of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions immediately be vacated;

4.    That upon the posting of Plaintiff's counter-security in the sum of  $1,125,493.23, that this matter be placed on the suspense calendar pending arbitration in London, and that this Court retain jurisdiction over this matter through the entry of any judgment or award associated

with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

     5.    That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the counter-claims set forth herein as a Judgment of this Court; and

     6.    That this Court grant Defendant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      July 31, 2008

HOLLAND & KNIGHT LLP

By:    _____
       Michael J. Frevola
       Christopher R. Nolan
       195 Broadway
       New York, New York 10007
       Telephone: (212) 513-3200
       Telefax: (212) 385-9010 fax
       E-mail: michael.frevola@hklaw.com
            christopher.nolan@hklaw.com
       *Attorneys for Defendant*

To:    DEORCHIS, WIENER & PARTNERS
       John A. Orzel
       61 Broadway, 26th Floor
       New York, New York
       10006-2820
       *Attorneys for Plaintiff*

# 5510478_v1

**DeOrchis & Partners, LLP**
61 Broadway, 26th Floor
New York, New York  10006-2802
(212) 344-4700

'08  CIV  6387

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GLOBAL TRANSPORTE OCEANICO,

                                            Plaintiff,

           - against -

BRYGGEN SHIPPING and TRADING A/S,

                                            Defendant.
-------------------------------------------------------------X

08 Civ.          (      )

**ATTORNEY AFFIDAVIT IN
SUPPORT OF RULE B MARITIME
ATTACHMENT**

State of New York    )
                     )     ss: New York City
County of New York )

           John A. Orzel, being duly sworn, deposes and says:

           1.     I am a member in good standing of the bar of this Court and a partner in the law

firm of De Orchis & Partners, LLP., representing the plaintiff, GLOBAL TRANSPORTE

OCEANICO (hereinafter "Global").  I make this Affidavit in support of plaintiff's  prayer for

the issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the

Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil

Procedure, and in support of plaintiff's  prayer for an Order appointing a special process

server under F.R.Civ.P. 4(c); prayer for permission to serve later identified garnishees; prayer

for permission to deem service continuous; and prayer for an Order temporarily sealing this

action.

*Defendant Cannot Be Located Within The Jurisdiction Of This Court:*

2.    I have personally attempted to locate the defendant, BRYGGEN SHIPPING and TRADING A/S, ("Bryggen"), within this District.  As part of my investigation I have to locate the defendant within this District, I conducted a search of the internet at www.yahoo.com and www.google.com.  Defendant does not have a website that was found.

3.    I also reviewed the telephone company information directory maintained on the World Wide Web or Internet, as well as the white and yellow pages online to determine if there were any listings for the defendant in any of the counties within this District (e.g., Bronx, Dutchess, New York, Orange, Putnam, Rockland, Sullivan and Westchester) and did not find any listing for the defendant.

4.    Finally, I reviewed online information for the Department of State for the State of New York, which did not contain any listing for a company with the defendant's  name, or any similar name, with a presence within the Southern District of New York.

5.    I submit based on the foregoing that the defendant BRYGGEN SHIPPING and TRADING A/S,, cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

6.    Upon information and belief, the defendant BRYGGEN SHIPPING and TRADING A/S,, has, or will have during the pendency of this action property, goods, chattels or credits and effects within the District in the hands of garnishees including, but not limited to, ABN Amro, American Express Bank, Atlantic Bank of New York, Bank of America, Bank of China, Barclay's  Bank, BNP Paribas, Citibank, Deutsche Bank Trust Co.,  DNB Nor Bank

ASA, HSBC Bank NA, JP Morgan Chase Bank, The Bank of New York, Standard Chartered Bank, Societe Generale and/or Wachovia Bank,

*Prayer For An Order Appointing A Special Process Server:*

7.     Plaintiff seeks an Order pursuant to Rule 4 (c) of the Federal Rules of Civil Procedure appointing John A. Orzel, Justin Waytowich, or any other partner, associate, paralegal or agent of De Orchis & Partners, LLP., in addition to the United States Marshall, to serve the *Ex Parte* Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by plaintiff) may hold property of, or on account of. The defendant.

8.     Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy any judgment/award ultimately obtained by plaintiff and entered against the defendant.

9.     To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the U.S. Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

*Prayer For Relief To Serve Later Identified Garnishees*

10.    Plaintiff respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information obtained during the course of this litigation, to be

holding, or believed to be holding, property of the defendant, within the jurisdiction of this Court. Obtaining leave of the Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify additional garnishee(s).

### *Prayer For Relief To Deem Service Continuous*

11.     In order to avoid the necessity of physically serving the garnishees/banks daily and repetitively, plaintiff respectfully seeks leave of the Court, as set out in the accompanying *Ex Parte* Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service throughout the remainder of the day upon which service is made commencing from the time of such service and such service to be further deemed effective and continuous through the end of the next business day, provided that another service is made that day, and to authorize service of process via facsimile or e-mail following initial *in personam* service, if such service via facsimile or e-mail is permitted by the garnishees/banks.

### *Prayer To Temporarily Seal The Case*

12.     Plaintiff prays for an Order temporarily sealing the Court's  file in this matter so that the name of the defendant is not disclosed until assets, chattels, credits and affects belonging to the defendant are attached pursuant to the Court's Order of attachment.

13.     Upon information and belief, it is the practice of several maritime law firms to review cases filed in the Southern District of New York on a daily basis so that they may

advise their clients about any action in which the client has been named. This clearly defeats the *ex parte* nature of the Rule B attachment.

14.    With the increase in the number and importance of Rule B attachments filed in the Southern District of New York, at least one shipping publication, TradeWinds, will publish the name and particulars of Rule B attachment cases in its daily internet and weekly print publications. This publication of the names of defendants defeats the *ex parte* nature of the Rule B attachment.

15.    The easy access to and/or publication of the names of defendants in Rule B attachment cases defeats the *ex parte* nature of the procedure by allowing defendants the ability to take steps to avoid the jurisdiction of the Court by employing third-party paying agents as well as other means to defeat the application of Rule B. This Court has an interest in preserving the efficacy of the Rule B procedure and to uphold the purpose of Rule B, which is to protect maritime commerce and the maritime industry.

16.    The above noted interests supersede the interest in maintaining complete public access to the Court's  docket. The relief being sought by plaintiff is temporary in duration and will allow plaintiff to avail itself of the *ex parte* nature of Rule B by being able to restrain assets and/or property of the defendant. As soon as plaintiff has succeeded in securing assets and/or property belonging to the defendant, Local Civil Rule B.2 requires that plaintiff provide notice to the defendant. Once assets and/or property are restrained, the Court file can be unsealed.

17.    For the foregoing reasons, plaintiff requests that the Court issue an Order temporarily sealing the Court file in this matter, including the Verified Complaint and all other pleadings and Orders filed and/or issued herein until further Order of the Court.

Dated: July 15, 2008
       New York, New York


                                                    _____
                                                    John A. Orzel




Sworn and subscribed to before me
this 15th day of July, 2008.

_____
Notary Public


        RICHARD L. FURMAN
NOTARY PUBLIC, State of New York
        No. 6433700
    Qualified in Nassau County
Commission Expires Sept. 30, 2010