Michael J. Frevola
Christopher R. Nolan
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR DEFENDANT
BRYGGEN SHIPPING AND TRADING A/S

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| GLOBAL TRANSPORTE OCEANICO, | |
|---|---|
| Plaintiff, | 08 Civ. 6387 (DLC) |
| -against- | |
| BRYGGEN SHIPPING and TRADING A/S, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR COUNTERSECURITY**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii
PRELIMINARY STATEMENT .................................................................................................. 1
STATEMENT OF FACTS ........................................................................................................... 2
ARGUMENT ................................................................................................................................ 5
POINT I
     BRYGGEN IS ENTITLED TO FULL COUNTER-SECURITY FOR ITS
     COUNTER-CLAIM ........................................................................................................... 5
        A.    Bryggen Has Set Forth a Well-Pleaded Counter-claim and
             Introduced Ample Evidence in Support of its Allegations against
             Global ..................................................................................................................... 5
        B.    Full Counter-security is Appropriate in This Case Because of the
             Significance of the Defects and Global Soon to Being Fully
             Secured for its Claims ............................................................................................ 9
CONCLUSION ........................................................................................................................... 11

# TABLE OF AUTHORITIES

## CASES

*Americas Bulk Transport Ltd. v. Volcano Shipping S.A.*,
   2008 WL 190336 (S.D.N.Y. Jan. 18, 2008). ...........................................................................6

*Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A.*,
   No. 06 Civ. 15299, 2007 WL 646329 (S.D.N.Y. Feb. 26, 2007) ......................................9, 10

*Front Carriers, Ltd. v. Transfield ER Cape. Ltd.*,
   No. 07 Civ. 6333, 2007 WL 4115992, at *2 (S.D.N.Y. Nov. 19, 2007) ................................7

*Pancoast Trading S.A. v. Eurograni S.R.L*,
   No. 07 Civ. 8581, 2008 WL 190376 (S.D.N.Y. Jan. 22, 2008) ................................. 6, 8, 9-10

*Result Shipping Co., Ltd. v. Ferruzzi Trading USA Inc.*,
   56 F.3d 394 (2d Cir. 1995) ......................................................................................................6

*Voyager Shipholding Corp. v. Hanjin Shipping Co., Ltd.*,
   No. 07 Civ. 11123, 2008 WL 400923 (S.D.N.Y. Feb. 13, 2008) ............................................7

## STATUTES

Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset
   Forfeiture Actions Supplemental Rule B ..................................................................... *passim*

Rule E(7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset
   Forfeiture Actions ......................................................................................................... *passim*

## PRELIMINARY STATEMENT

Defendant Bryggen Shipping and Trading A/S respectfully submits this memorandum of law in support of its motion for counter-security against plaintiff Global Transporte Oceanico ("Global") pursuant to Rule E(7)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, which presents the following issues:

(1)   It is well settled that an order directing the posting of counter-security is appropriate when a plaintiff has sought security for its claims and the defendant's counter-claim is based on the same transaction and occurrence. Plaintiff Global has obtained an attachment order for $874,728.95 against Bryggen, successfully attached $189,448.37 to date, and in the coming days will be fully secured per a $874,728.95 letter of guarantee to be issued by Bryggen's bank in favor of Global, while Defendant Bryggen seeks counter-security for its counter-claim under the same charter party totaling $1,125,493.23. Should the Court grant Bryggen's motion for counter-security?

(2)   Supplemental Rule E(7)(a) does not limit the amount of counter-security that a counter-claimant may obtain to the amount of security sought by the plaintiff. Bryggen's counter-claim is a maritime claims for which it could have sought its own Rule B attachment order against Global, and Global is soon to be fully secured for its claims. Should the Court grant Bryggen's motion for counter-security in an amount greater than the amount sought to be attached by Global?

Bryggen respectfully submits that the answer to both questions should be "yes," and that this Court should issue an order directing global to post counter-security in the amount of $1,125,493.23.

1

## STATEMENT OF FACTS

The allegations in Global's complaint, and Bryggen's counter-claim, arise under the same agreement, the bareboat charter party contract (the "Charter") whereby Global, as Charterer, contracted with Bryggen, as Owner, on or about December 29, 2004 for an agreed upon charter hire of the *M/T Global Bahia* (the "Vessel"). Complaint, ¶ 5; Counterclaim, ¶ 34.

Global, however, failed to meet the required conditions prior to its alleged redelivery of the vessel on May 20, 2008, and therefore, breached the Charter. Under Clause 15 of the Charter, Global was required to redeliver the vessel to Bryggen in the same or as good structure, state, condition, and class as that in which she was delivered..." Counter-claim ¶¶ 35-36. Under Clause 10 of the Charter, Global was permitted to change the flag of the Vessel, but the process of re-flagging and re-registration of the vessel was to occur on Global's time and at Global's expense. *Id.* ¶ 37. In violation of the terms of the Charter, the Vessel had not been reflagged, the Inmarsat system for the Brazilian number had not been de-activated and Bryggen's crews were not permitted to board the Vessel. Further, Bryggen did not agree to the recommendations and conditions of the class of the Vessel prior to its redelivery. *Id.* ¶ 38.

The Vessel also failed to meet the conditions of redelivery because it had numerous defects and required serious repairs. Under Clause 10 of the Charter, Global was obligated to "maintain the Vessel, her machinery, boilers, appurtances and spare parts in a good state of repair, in efficient operating condition and in accordance with good commercial maintenance practice..." Under the Charter, Global was also obligated to compensate Bryggen for repairs of the defects inflicted to the Vessel during the time the vessel was in Global's control. Upon inspection of the Vessel many serious defects were identified. *Id.* ¶¶ 39-40.

The Vessel defects are numerous, with the most serious being main engine damage and non-original cylinder liners being installed in certain units which resulted in the under-performance of the main engine. The specific damages are detailed more fully in Bryggen's Counter-claim and the Declaration of Vadali Murthy dated July 31, 2008 ("Murthy Decl."). *See* Counter-claim ¶¶ 41-42; Murthy Decl. ¶ 11.

Under Clause 9 of the Charter, Global is required to "ensure that all spare parts listed in the inventory and used during the Charter Period are replaced at their expense prior to redelivery of the vessel." Accordingly, Global was obliged to ensure that the Vessel had all of the spare parts initially provided by Bryggen replaced and on board prior to redelivery of the Vessel. *Id.* ¶ 43. Global failed to replenish the spare parts it used during the charter period, as detailed in Bryggen's counter-claim ¶ 44.

After Global breached its obligations under the Charter, Bryggen had the Vessel undergo initial repairs for a number of its defects in a port in Montevideo, Uruguay from July 1, 2008 until July 17, 2008. The repairs were performed by Tsakos Industrias Navalas S.A. ("Tsakos"). The invoice for the initial repairs totaled $142,758; which Bryggen paid Tsakos in full. During the time the Vessel was undergoing initial repairs in Montevideo, Uruguay, Bryggen incurred additional expenses related to port pilotage and other port expenses in the amounts of $39,505 and $20,550. *Id.* ¶¶ 45-46.

The remaining vessel repair costs, replacement of parts, and expenses by subcontractors in connection with the Vessel repairs (including vessel agents, surveyors, suppliers, and others), for which Global is liable for its breach of the Charter, amount to $805,393. Murthy Decl. ¶¶ 10-12; Counter-claim ¶¶ 45-47. The total estimated cost to repair all of the Vessel defects, replace the spares on the Vessel, and expenses in connection therewith, is $1,008,206. *Id.* ¶ 48.

On or about May 20, 2008, when Global alleges to have redelivered the vessel, Bryggen's crew were not permitted to board the vessel due to re-flagging issues. Bryggen suffered loss of hire in the amount of $4,600 per day for a total of twenty-seven days totaling $124,200. Bryggen also was forced to pay crewing and superintendent costs in connection with the Vessel damage and in the approximate amount of $150,000. Bryggen's total principal counter-claim against Global is $1,282,406. Id. ¶¶ 49-51.

In a side letter to the Charter, Global agreed to place $500,000 in an escrow account at DnB NOR Bank ASA as a guarantee for among other things, "unrightful redelivery of the Vessel, damage to the Vessel or lack of agreed maintenance." The current amount in escrow, with interest, totals $551,881.02. *See* Affirmation of Christopher R. Nolan dated July 31, 2008 ("Nolan Aff."), ¶ 7. Bryggen's total principal claim, less the $551,881.02 already secured against Global, totals $730,524.98. Counter-claim ¶ 53. With legal costs, expenses, and reasonable interest recoverable under English law in connection with the London arbitration where the substantive dispute will be resolved, (described in Counter-claim ¶ 54), Bryggen's cumulative counterclaim against Plaintiff totals $1,125,493.23. ¶ 55.

To date, Global has attached $189,448.37 of Bryggen's monies in connection with the Court's attachment order. Nolan Aff. ¶ 4. However, overseas counsel for both Global and Bryggen have agreed to a letter of guarantee in the full amount of Global's claim here, $874,728.95. *Id.* ¶ 5. The letter of guarantee is expected to be completed and executed by Bryggen's bank, DnB NOR Bank ASA, in the coming days. *Id.* At that time, Global will be fully secured for the claims asserted in this action. *Id.* ¶ 6.

4

## ARGUMENT

The United States Court of Appeals for the Second Circuit and courts within this District have recognized that a defendant is entitled to counter-security when it alleges a non-frivolous counter-claim that arises out of the same transaction and occurrence as the plaintiff's claim. Here, Bryggen's counter-claim arises from the Charter on which the claims Global's Verified Complaint are founded. As such, this Court should order Global to post counter-security within ten days of its opinion and order. In the event that Global refuses to comply with a counter-security order that might be issued, the attachment order against Bryggen should be vacated and/or Global should be enjoined from prosecuting its claims against Bryggen here, in London arbitration, or elsewhere.

## POINT I

### BRYGGEN IS ENTITLED TO FULL COUNTER-SECURITY FOR ITS COUNTER-CLAIM

Bryggen's counter-security request is premised on a valid counter-claim arising out of Global's breach of the Charter. That same Charter serves as the predicate for claims alleged by Global in its Verified Complaint. Hence, as discussed below, Bryggen's motion for counter-security should be granted in full.

    A.    **Bryggen Has Set Forth a Well-Pleaded Counter-claim and Introduced Ample Evidence in Support of its Allegations against Global**

Bryggen has satisfied the statutory requirements for counter-security. Counter-security is governed by Supplemental Rule E(7)(a), which provides:

> When a person who has given security for damages in the original action asserts a counter-claim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counter-claim unless the court for

cause shown, directs otherwise. Proceedings on the original claim must be stayed
until this security is given unless the court directs otherwise.

Fed. R. Supp. P. Supp. R. E(7)(a).

In a recent decision concerning a counter-security, the court described the purpose behind the admiralty counter-security rule as follows:

> The point of the rule is to make sure that when parties to the same transaction assert claims against each other arising from that transaction, the parties should both be fully secured, where possible, and neither should have the additional leverage of holding security, while the other must wonder if a judgment in its favor would ever be paid.

*Pancoast Trading S.A. v. Eurograni S.R.L*, No. 07 Civ. 8581, 2008 WL 190376, at *3 (S.D.N.Y. Jan. 22, 2008).

The Court of Appeals for the Second Circuit has set forth two principles for district courts to consider when a defendant seeks countersecurity: (1) "to place the parties on an equality as regards security;" and (2) "the Rule is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit." *Result Shipping Co., Ltd. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394, 399 (2d Cir. 1995); *see also Americas Bulk Transport Ltd. v. Volcano Shipping S.A.*, 2008 WL 190336, at *1 (S.D.N.Y. Jan. 18, 2008). While courts have "broad discretion" in determining whether to order the posting of counter-security, the notion of placing the parties on equal grounds "usually favors granting counter-security when a defendant whose property has been attached asserts non-frivolous counter-claims growing out of the same transaction . . . ." *Result Shipping*, 56 F.3d at 399-400. For instance, in *Americas Bulk Transport Ltd.*, 2008 WL 190336, *1, this Court granted the defendant's counter-security request where the "[t]he counterclaim [arose] out of the same charter party that is the subject of plaintiff's claims" and the defendant's assets had been attached. In essence, the Court must weigh "the burden of posting counter-security, against the potential injustice of requiring the

6

defendant-counter-claimant to post security without affording reciprocal protection." *Result Shipping*, 56 F.3d at 400.

In *Voyager Shipholding Corp. v. Hanjin Shipping Co., Ltd.*, No. 07 Civ. 11123, 2008 WL 400923 (S.D.N.Y. Feb. 13, 2008), the court granted a request for counter-security under Supplemental Rule E(7). The defendant Hanjin sought $388,157.80 in counter-security in connection with its speed and over-consumption counter-claims. The plaintiff challenged the counter-security request on many grounds, the primary of which concerned the lack of evidence submitted by Hanjin in support of its counter-claim. It also submitted a declaration from an English solicitor which argued that Hanjin would not be successful in the English arbitration when asserting its speed and over-consumption claims. Hanjin countered by submitting its own English solicitor's declaration which reached a different conclusion than that of the plaintiff's English solicitor. 2008 WL 400923, at *3.

Recognizing that an "inquiry into the merits of the claims is 'severely limited,'" the Court refused to determine which of the rivaling foreign law declarations was correct on a counter-security application. *Id.* (quoting *Front Carriers, Ltd. v. Transfield ER Cape. Ltd.*, No. 07 Civ. 6333, 2007 WL 4115992, at *2 (S.D.N.Y. Nov. 19, 2007)). And it rejected the notion that the lack of evidence proffered at this initial inquiry stage would be fatal to Hanjin's application because Hanjin had submitted a "well-pleaded counter-claim." *Id.* Accordingly, the Court granted Hanjin's application for counter-security, though for a lesser amount than requested. *Id.* at *5.

Here, Bryggen has submitted detailed proof of its counter-claim, above the threshold pleading requirements necessary to support its counter-claim. Bryggen's counter-claim contains detailed allegations concerning Global's responsibility for vessel repair costs, replacement of

7

spare parts, and expenses by subcontractors in connection with the Vessel repairs. *See* Nolan Aff., Ex. B ¶¶ 34-56.

Additionally, Bryggen has submitted a sworn declaration from a Senior Superintendent at EMS Ship Management (India) Pvt. Ltd., Mr. Vadali Murthy, Bryggen's technical managers. *See* Murthy Decl. ¶ 1. Mr. Murthy has personally inspected the Vessel and prepared a detailed inspection report noting the specific deficiencies with the Vessel. *Id.* ¶¶ 7-8. Moreover, he addresses the repair work still needed to be completed on the Vessel, along with the expected costs based on his experience in the industry and specific meetings and quotes with vessel repair and spare parts companies. *Id.* ¶¶ 2-4, 10-13. Altogether, this proof easily satisfies Bryggen's burden of showing that its counter-claim is not frivolous. *See Front Carriers, supra,* 2007 WL 4115992, at *3 (addressing the necessary pleading for a non-frivolous counter-claim and statement of damages, which need not be proven with "'exactitude,'" and ultimately granting the defendant's motion for counter-security in full.) (citation omitted).

Bryggen respectfully submits that its well-pleaded verified counter-claim, supported by both declaratory and documentary support, merits the awarding of counter-security pursuant to Supplemental Rule E(7).[1]

---

[1] Bryggen respectfully requests that Global be provided no more than ten business days to comply with any counter-security order this Court might issue, and that such counter-security take a form consistent with Rule 65.1.1(b) of the Local Rules for the Southern District of New York. *Pancoast, supra,* 2008 WL 190376, at *2-3 (S.D.N.Y. Jan. 22, 2008).

B.  **Full Counter-security is Appropriate in This Case Because of the Significance of the Defects and Global Soon to Being Fully Secured for its Claims**

Bryggen's counter-security request should be judged on the sufficiency of its damages allegations in its counter-claim, not on such an arbitrary amount as that sought by Global in its Verified Complaint. This argument, raised by the plaintiff in *Voyager*, was summarily rejected and any similar arguments made here by Global likewise should be summarily rejected. As Global argued to its benefit in *Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A.*, No. 06 Civ. 15299, 2007 WL 646329, *2 (S.D.N.Y. Feb. 26, 2007), a case in which Global itself was seeking full countersecurity for its counter-claim, a party's "right to security for its claim should not be limited simply because the claim was brought as a counterclaim rather than as an original claim." Bryggen respectfully agrees with Global's previous arguments on the matter.

In *Pancoast Trading S.A.*, 2008 WL 190376, at *3, the court noted that Supplemental Rule E(7) provides that a plaintiff "must give security 'for damages demanded in the counter-claim.'" (quoting Supp. R. E(7)(a)). With respect to the amount of security, the Court further noted that Supplemental Rule E(7) "does not limit the countersecurity to the amount of the security provided by the defendant to secure the plaintiff's claim." *Id.* The *Pancoast* court aptly described the reason for such a rule is to prevent a "race to the courthouse" whereby an enterprising plaintiff could stave off a larger affirmative Rule B attachment claim against it by asserting a smaller claim first:

> The rule seeks to provide security of recovery against the event of a successful claim, as a substitute for the actual seizure of vessels, which otherwise would be the only means to secure an eventual judgment in the far-flung and highly mobile world of maritime commerce. Had [the defendant] filed first, it would surely have been entitled to a Rule B attachment fully securing its claim. A party with a small claim should not be enabled to defeat full security for a counterparty's larger claim simply by winning the race to the courthouse.

9

*Pancoast*, 2008 WL 190376, at *1.

Although courts vary in granting counter-security based on the amount of a plaintiff's claim, the amount of the defendant's monies currently under attachment, or the full amount of the defendant's counter-claim, *see generally Clipper Shipping Lines, supra,* 2007 WL 646329, *2 (summarizing the different approaches used by courts when granting counter-security), Bryggen submits that this Court should exercise its discretion to grant full counter-security under Supplemental Rule E(7) as Bryggen has supported its counter-claim damages allegations in a substantial manner, especially at this early stage of the case.

While Global has attached $189,448.37 to date, Bryggen has agreed to provide Global with a letter of guarantee to fully secure its $874,728.95 in claims and said guarantee should be fully executed and in effect in the coming days. Nolan Aff. ¶ 5. In order to place the parties on equal footing, the court should grant Bryggen's request for counter-security to ensure that both parties, not only Global, have fully secured claims.

In all, because Bryggen will seek full remuneration of its damages in London arbitration and in light of the sizable damages, it seeks reasonable security in aid of arbitration here. Bryggen respectfully submits it should be granted full counter-security on its counter-claim in this amount of $1,125,493.23.

## **CONCLUSION**

Because:

(1)  Bryggen has alleged a non-frivolous counter-claim against Global on the same transaction and occurrence that is the basis for Bryggen's claim;

(2)  Global has obtained its own attachment order, has attached its own security, and will soon be fully secured per a letter of guarantee from Bryggen's bank;

(3)  Supplemental Rule E(7)(a) by its terms does not limit counter-security applications to the amount claimed by the plaintiff; and

(4)  Bryggen has maritime claims against Global on which it could have commenced its own Rule B against Global.

Defendant Bryggen Shipping and Trading A/S respectfully requests that this Court grant its motion for counter-security in the amount of $1,125,493.23 and award such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      July 31, 2008

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: _____
Michael J. Frevola
Christopher R. Nolan
195 Broadway
New York, New York  10007
(212) 513-3200
Michael.frevola@hklaw.com
Attorneys for Defendant
*Bryggen Shipping and Trading A/S*

# 5511191_v1